IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY BETHEA<br><br>*Plaintiff,*<br><br>-- against --<br><br>KEVIN D. CULLEN<br>CULLEN & ASSOCIATES, P.C.<br><br>*Defendants.* | Civil Action No. 17-CV-9937<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff MARY BETHEA by her attorneys, MANHATTAN LEGAL SERVICES, INC., for her Complaint against Defendants KEVIN D. CULLEN and CULLEN & ASSOCIATES, P.C. alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Mary Bethea (hereinafter "Ms. Bethea") is a sixty-nine year old disabled woman who lives with her adult developmentally disabled son in a rent regulated apartment, their home of more than thirty years. Although Ms. Bethea was current in her rent, defendants, on behalf of their client, the receiver for her building, filed a nonpayment proceeding against her in housing court to evict her. Through records subpoenaed to court, Ms. Bethea established that with the exception of $18.00, she was not was not responsible for the $5427.73 the receiver claimed she owed. The balance of the arrears resulted from the suspension of Ms. Bethea's federal rental subsidy after her apartment failed an annual inspection because the receiver did not make necessary repairs. Despite having reviewed the subpoenaed records, defendants took a default judgment for the entire amount against Ms. Bethea when she missed a court date due to a medical emergency, opposed the vacatur of the default judgment and litigated the case for months before finally discontinuing the case.

2.     Ms. Bethea now brings the instant action for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 USC § 1692, *et seq.;* the New York Consumer Protection Act (hereinafter "NYCPA"),N.Y. General Business Law § 349, *et seq.,;* and the New York Judiciary Law §487 (hereinafter "NYJL"). Defendants engaged in abusive and harassing debt collection practices by filing a lawsuit threatening to evict plaintiff if she did not pay rent arrears she did not owe in violation of the FDCPA. Defendants engaged in deceptive practices in violation of the NYCPA by making material misrepresentations and omissions to the court in order to help their client evade the financial sanction of suspension of the federal rental subsidy imposed by its administrator for their client's misconduct in violation of the NYCPA. Defendant Cullen made false representations in a nonpayment petition to mislead the court regarding plaintiff's liability for the rent arrears, took a default judgment against her for money he knew she did not owe, and, upon information and belief, prolonged litigation for his own gain in violation of the NYJL.

3.     Ms. Bethea seeks an injunction barring defendants from engaging in such deceptive acts and practices, to recover statutory damages, actual damages, costs and attorney's fees against all defendants under the FDCPA and the NYCPA, punitive damages under the NYCPA and treble damages from defendant Cullen for his violation of NYJL §487.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to the FDCPA, 15 USC § 1692k(d), and 28 USC §1331.

5.     This Court has supplemental jurisdiction over Plaintiffs' claims under the NYCPA (GBL § 349) and the NYJL pursuant to 28 USC § 1367 because they share a common

nucleus of operative fact with the federal claim, and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

6. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

7. Venue in this district is proper under 28 USC § 1391(b) because both defendants transact business in the Southern District of New York, and all transactions which form the basis of this action occurred in New York County.

## PARTIES

8. Mary Bethea is a natural individual who lives in New York County.

9. Defendant Kevin D. Cullen is an attorney partner at Cullen & Associates, P.C. and maintains his office in New York County.

10. Defendant Cullen & Associates P.C. is a New York professional corporation with a principal place of business in New York County.

## STATUTORY FRAME WORK

### The Fair Debt Collection Practices Act

11. Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 USC § 1692(a).

12. Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 USC § 1692e.

13. Prohibited conduct in violation of this section includes, but is not limited to:

   a. "The false representation or implication of the character, amount, or legal status of any debt." 15 USC § 1692e(2).

    b. "The threat to take any legal action that cannot legally be taken or that is not intended to be taken." 15 USC § 1692e(5).

    c. "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 USC § 1692e(8).

    d. "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 USC § 1692e(10).

14. A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt." 15 USC § 1692f.

15. Prohibited conduct in violation of this section includes, but is not limited to, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 USC § 1692p(f)(1).

16. In addition, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 USC § 1692d.

17. Consumers may recover $1,000 in statutory damages and actual damages from a debt collector violating the above provisions of the FDCPA. 15 USC § 1692k(a)(2)(A).

18. In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court. 15 USC § 1692k(a)(3).

**The New York Consumer Protection Act**

19. The New York Consumer Protection Act (hereinafter "NYCPA") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law §349(a). (hereinafter "GBL§349")

20. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." GBL §349.

21. The damages award may be increased to an amount not to exceed three times the actual damages up to $1,000 if a court finds the defendant willfully or knowingly violated this section. GBL §349h.

22. Under GBL §349c, the court may assess additional civil penalties in the amount of $10,000.00 for deceptive conduct where the defendant knew its conduct was directed towards an elderly person and willfully disregarded the rights of the elderly person or where the elderly person suffered physical, emotional or economic damage from the defendants' conduct.

### New York Judiciary Law Section 487

23. New York Judiciary Law §487 (hereinafter "NYJL") creates a private right of action against any attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" or "[w]illfully delays his client's suit with a view to his own gain." NYJL §487.

24. Any such attorney or counselor "forfeits to the party injured treble damages, to be recovered in a civil action." NYJL §487.

### Section 8 Tenant Based Assistance:  Housing Choice Voucher Program

25. Congress enacted the United States Housing Act of 1937 ("The Act") "to remedy the unsafe and unsanitary conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income." 42 USC § 1437.

26. Section 8 of the Act, added in 1974, authorizes the Secretary of Housing and Urban Development (hereinafter "HUD") to enter into annual contributions contracts with public housing agencies (hereinafter "PHAs"). Such agencies may enter into contracts to make assistance payments to owners of existing dwelling units. 42 USC § 1437f(b)(1).

27. Under the federal regulations governing the Section 8 program, an owner who has a contract with a PHA must maintain the unit in accordance with Housing Quality Standards (hereinafter "HQS") defined by 24 C.F.R § 982.404.

28. The PHA must inspect the unit to determine if it meets the HQS. 24 CFR § 982.405.

29. The PHA is prohibited from making "any housing assistance payments for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect ..." 24 CFR §982.40.

30. A PHA's failure to pay the landlord any of the subsidy portion of the rent because the unit fails to meet the HQS does not constitute a violation of the lease between the landlord and tenant and thus does not constitute grounds for eviction. 24 CFR § 982.310(b).

## FACTS RELATED TO THIS COMPLAINT

31. Plaintiff Mary Bethea (hereafter "Ms. Bethea") is a disabled sixty-nine year old who lives in a rent stabilized apartment with her two adult sons, one of whom is developmentally disabled.

32. The building Ms. Bethea lives in is owned by Hamilton Heights Cluster Associates, L.P. (hereafter "Landlord").

33. Ms. Bethea has lived in her apartment for more than thirty years pursuant to an original lease agreement between the landlord and herself and subsequent renewal lease agreements.

34. Ms. Bethea is a participant in the federal tenant based Housing Choice Voucher Program (hereafter "Section 8") administered by the New York City Department of Housing Preservation and Development (hereafter "HPD").

35. Under Section 8 program regulations, HPD sets Ms. Bethea's share of the monthly rent on an annual basis.

36. The difference between Ms. Bethea's share of the rent and the actual monthly rent is paid through her Section 8 rent subsidy, which HPD sends directly to her landlord.

37. Upon information and belief, the landlord entered into a Housing Assistance Payment contract (hereafter "HAP Contract") with HPD in which it agreed to comply with Section 8 program regulations in order to receive Section 8 subsidy payments.

38. Under the terms of the HAP Contract, the landlord must maintain the apartment in compliance with Section 8 Housing Quality Standards (hereafter "HQS").

39. If the apartment fails to pass an annual HQS inspection, Section 8 may suspend the subsidy until such time as the apartment passes the inspection.

40. The HAP contract tenancy addendum provides that the tenant is not liable for payment of the Section 8 subsidy portion of the rent, and that the owner may not terminate the tenancy for nonpayment of the Section 8 subsidy portion of the rent.

41. Further, New York Appellate courts have held that a landlord cannot maintain a nonpayment proceeding against a tenant for arrears caused by the suspension of the Section 8 subsidy, regardless of the cause for the suspension. *Prospect Place HDFC v. Gaildon*, 6 Misc.3d

135(A), 800 N.Y.S.2d 355 (App. Term 1st Dept. 2005); 57 Misc.3d 135(A); *Soumas v. Gregg*, 57 Misc.3d 135(A) (App. Term 1st Dept. 2017) [1]; *Licht v. Moses*, 11 Misc.3d 76, 813 N.Y.S.2d 849 (App. Term 2nd Dept. 2006); *Pinnacle Bronx West, LLC v. Jennings*, 29 Misc.3d 619, 10 N.Y.S.2d 335 (App. Term, 1st Dept. 2010)

42. Ms. Bethea has used her Section 8 voucher in her current apartment for more than ten years.

43. Upon information and belief, Section 8 suspended the payment of Ms. Bethea's subsidy based on the apartment's failure to pass an HQS inspection in or about June 2016, due to the receiver's failure to make necessary repairs in the apartment.

44. Ms. Bethea continued to pay her monthly share of the rent after Section 8 suspended the subsidy.

45. On December 22, 2016, defendant Cullen & Associates, P.C. (hereafter "C & A") filed a nonpayment proceeding against Ms. Bethea on behalf of Mr. Gregory Soumas (hereafter "receiver"), the temporary receiver for the building in which she lives.

46. The nonpayment alleged that as of December 19, 2016, Ms. Bethea owed $5427.73 in rent arrears for the period of May 2016 through December 2016.

47. The petition listed C & A as the attorney for the petitioner.

53. Defendant Kevin D. Cullen (hereafter "Cullen") verified the petition, stating that he did so rather than the petitioner because the petitioner was unavailable, and certified that the pleadings were not frivolous pursuant to the Uniform Civil Rules for the Supreme and County Courts of New York § 220.16 Part 130-1.1(a).

---

[1] This appeal involved a tenant living in the same building as plaintiff that the receiver sued for rent arrears caused by the suspension of a Section 8 subsidy. Defendants took the appeal on behalf of the building's receiver, their client in the underlying nonpayment proceeding which forms the basis for plaintiff's claims in this action.

54. The verification stated Cullen had read the petition and knew the contents to be true with the exception of those facts alleged upon information and belief, which he believed to be true.

55. The entire contents of the petition were alleged upon information and belief.

56. Upon information and belief, Cullen and C & A did not conduct a reasonable investigation to determine whether the rent arrears were owed prior to verifying and filing the complaint.

57. The petition contained numerous misrepresentations made by statement or omission.

53. The petition omits any reference to Ms. Bethea holding a Section 8 voucher.

54. The petition alleges Ms. Bethea owed the full monthly rent of $723.56 per month from June 2016 through December 2016 and $299.81 for May 2016.

55. Under Section 8 program regulations, the HAP contract, the tenant lease addendum, and relevant case law, Ms. Bethea is only responsible for paying her share of the rent and she has no liability for the portion of the rent paid through her Section 8 subsidy.

56. Ms. Bethea's share of the rent from August 1, 2016 through December 31, 2016 was $366.00 per month, and upon information and belief, was $360.00 per month prior to that.

57. The petition failed to credit Ms. Bethea for rent payments made during the months in which the petitioner claimed arrears.

58. The petition claimed Ms. Bethea owed a total $5427.73 from May 2017 through December 2017, however she only owed $18.00, caused by a three month delay in adjusting the amount of her automatic bank payment to reflect a $6.00 increase in her share of the rent effective August 1, 2016.

59. The petition also failed to indicate that, with the exception of $18.00, all rent arrears claimed were attributable to nonpayment of the Section 8 subsidy portion of the rent, which had been suspended after the apartment failed its annual HQS inspection and the receiver failed to make repairs.

60. The petition sought a judgment of possession and attorney's fees if Ms. Bethea did not pay the rent arrears claimed in full.

61. On January 10, 2017, Ms. Bethea filed a pro se answer alleging a breach of warranty of habitability defense and a defense of full or partial payment of the arrears.

62. Ms. Bethea could not immediately obtain counsel and was forced to appear in court unrepresented for several months.

63. On the first court date of January 19, 2017, Ms. Bethea disputed owing the arrears because she had been paying her share of the rent.

64. She informed Cullen and the court that she had a Section 8 subsidy and the case was adjourned for Cullen to subpoena Section 8 records.

65. On the second court date of February 28, 2017, an HPD representative appeared in response to the subpoena.

66. A court stipulation drafted by Cullen on that date stated HPD suspended the Section 8 subsidy after Ms. Bethea's apartment failed an HQS inspection in June 2016.

67. Upon information and belief, HPD suspended the subsidy retroactive to the date of the inspection, which, upon information and belief, occurred in June of 2016.

68. The parties adjourned the case to March 27, 2017 for Cullen to consult with his client.

69. Ms. Bethea suffers from multiple severe and chronic medical conditions which are affected by stress.

70. Throughout the court proceeding, the pressures of being at risk of eviction and having to appear in court exacerbated her health problems.

71. Ms. Bethea missed her March 27, 2017 court appearance when she had to go to the emergency room to seek treatment, and the court entered a default judgment against her.

72. Defendants took the default judgment against Ms. Bethea for the entire amount of rent arrears claimed in the petition, although they had knowledge from Section 8 records produced on the prior court date that almost all the rent arrears were attributable to the Section 8 portion of the rent, for which Ms. Bethea was not liable.

73. On March 28, 2017, Ms. Bethea filed an order to show cause asking the court to vacate the default judgment on the grounds that she did not owe the rent arrears, that her apartment needed repairs, and she had a reasonable excuse for not appearing for the court date the day before, because she had to go to the emergency room.

74. Rather than consent to vacate the judgment on the return date of the order to show cause, defendants opposed Ms. Bethea's order to show cause with full knowledge that she was not legally liable for rent arrears caused by nonpayment of the Section 8 subsidy.

75. On the return date of April 6, 2017, the Honorable Jack Stoller issued an order vacating the default judgment, and directing the petitioner to inspect and repair the conditions Ms. Bethea alleged existed in the apartment as legally required.

76. Judge Stoller noted in his decision that the petitioner had not pleaded the Section 8 status of the apartment in the petition and had sought a judgment for the Section 8 subsidy portion of the rent.

77. Although he made no finding, Judge Stoller indicated in his decision that petitioner's rent breakdown and Ms. Bethea's receipts showed Ms. Bethea had made monthly rent payments of her share of the rent and owed only $27.56 as of the court date.

78. The court adjourned the proceeding to May 31, 2017.

79. Shortly before the adjourned date, Ms. Bethea obtained representation from Manhattan Legal Services, Inc. (hereafter "MLS")

80. MLS contacted C & A and asked them to bring a current rent breakdown to the court date.

81. On the adjourned date, Cullen provided a tenant ledger which showed Ms. Bethea owed only $18.00 due to an underpayment of $6.00 per month for three months.

82. Ms. Bethea offered to settle the case for the payment of $18.00 and completion of the repairs noted in Judge Stoller's April 6, 2017 decision.

83. When Cullen refused to enter into a settlement agreement that included repairs, the parties conferenced the case before the Honorable Judge Laurie Lau.

84. Judge Lau adjourned the case for the receiver to inspect and repair the conditions listed in Judge Stoller's order.

85. The receiver made the repairs listed in Judge Stoller's order.

86. On the adjourned date of July 13, 2017, Cullen refused to discontinue the case, although Ms. Bethea had a credit balance of approximately $38.00, and the matter was adjourned to September 7, 2017 for him to consult with his client.

87. Subsequent to the court date, MLS communicated with Cullen multiple times by e-mail and in person in July, August and September 2017, asking him to discontinue the case

with prejudice because Ms. Bethea had a credit balance, and sending him proposed stipulations of discontinuance.

88. On the next court date of September 7, 2017, Cullen still was not prepared to discontinue the case, and the case was adjourned again at his request to September 29, 2017, for him to consult with his client.

89. On September 29, 2017, Cullen did not appear.

90. Instead, an attorney named Robert Marino appeared of counsel to defendants, and stated that he had no authority to enter into the proposed stipulation to discontinue the case with prejudice because he had not gotten permission to do so from the receiver.

91. The parties appeared before the Honorable Laurie Lau, who granted Mr. Marino's oral application to discontinue the case without prejudice, but ordered the petitioner to pay costs in an amount equal to one month of Ms. Bethea's share of the rent.

92. Upon information and belief, the Section 8 subsidy continued to be suspended through November 2017 because the apartment had not yet passed an HQS inspection.

93. To date, Ms. Bethea's rent bill reflects rent arrears of over $10,000.00, when, in fact she has a credit balance.

94. Ms. Bethea faces the ongoing threat that the defendants will file a new nonpayment proceeding against her for rent arrears she does not owe, because the underlying nonpayment proceeding was not discontinued with prejudice, and the receiver continues to bill Ms. Bethea for the Section 8 arrears.

95. Ms. Bethea brings the instant action asserting that defendants violated her rights under the FDCPA, the NYCPA and the NYJL.

## FIRST CLAIM

### Violations of Fair Debt Collection Practices Act, 15 USC § 1692 *et seq.*

96. Plaintiff restates and incorporates the allegations of paragraphs 1 through 95 as if fully set forth herein.

97. Defendants Cullen and C & A violated the Fair Debt Collection Practices Act. Defendants' violations include but are not limited to the following:

   a. Making false representations and implications relating to the character, amount, and legal status of the debt in violation of 15 USC § 1692e(2);

   b. Using false representations and deceptive means to collect and attempt to collect a debt in violation of 15 USC § 1692e(10);

   c. Using unfair or unconscionable means to collect a debt in violation of 15 USC § 1692f; and

   d. Engaging in conduct intended to harass, oppress, or abuse Plaintiff in the collection of a debt in violation of 15 USC § 1692d.

98. As a result of the above violations, defendants Cullen and C & A respectively are liable to Plaintiffs for statutory damages in an amount to be determined at the time of trial up to $1,000.00 per violation; actual damages, including emotional distress; attorney's fees; and costs.

## SECOND CLAIM

### Violation of New York Consumer Protection Statute

99. Plaintiffs restate and incorporate the allegations of paragraphs 1 through 95 as if fully set forth herein.

100. New York prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state …" GBL §349(a).

101. Defendants Cullen and C & A have used deceptive consumer-oriented acts and practices in the conduct of its business.

102. Defendants' deceptive practices include but are not limited to:

   a. False representations that plaintiff owed rent arrears which were caused by the suspension of her Section 8 subsidy for HQS violations;

   b. Omitting to indicate in the nonpayment petition that plaintiff participated in the Section 8 voucher program;

   c. False representations that plaintiff owed rent arrears that she did not.

103. Defendants' deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

104. Defendants' deceptive consumer-oriented acts and practices have a broad impact on consumers at large, particularly those who are senior citizens, disabled and receive a federal housing subsidy, and cause injury and harm to the public interest.

105. Defendants committed the above-described acts willfully and/or knowingly.

106. As a result of defendants' violations of the NYCPA, plaintiff has suffered compensable harm, including costs related to defending a frivolous lawsuit and emotional distress.

107. Plaintiff accordingly is entitled to an injunction barring defendants from engaging in such deceptive acts and practices, statutory damages in an amount to be determined by the court, actual damages, costs, and attorney's fees.

108. Plaintiff also seeks punitive damages.

### THIRD CLAIM

### Violation of New York Judiciary Law §487

109. Plaintiff restates and incorporates the allegations of paragraphs 1 through 95 as if fully set forth herein.

110. NYJL §487 creates a private right of action against an attorney or counselor who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

111. Cullen violated NYJL §487 by verifying a nonpayment petition which made false representations that plaintiff owed rent arrears which she did not owe, that failed to state that plaintiff participated in the federal Section 8 voucher program, that misrepresented plaintiff's legal monthly rent liability and that failed to state that rent arrears claimed in the petition were attributable to the Section 8 subsidy portion of the rent.

112. Upon information and belief, defendant Cullen made these misrepresentations and omissions to deceive the court and plaintiff into believing plaintiff owed rent arrears she did not owe.

113. Defendant Cullen's repeated refusal to discontinue the frivolous proceeding after documents he subpoenaed to the court and his client's own rent ledger showed that plaintiff did not owe the rent arrears claimed, indicates his conduct was willful and knowing and calculated to increase his own gain.

114. The deceitful conduct of Cullen violated NYJL §487 and caused actual damages to plaintiff, including incurring expenses to defend a frivolous lawsuit.

115. Plaintiffs are entitled to actual damages, treble damages, attorneys' fees and costs for the violations of NYJL §487.

## DEMAND FOR JURY TRIAL

116. In accordance with Fed. R. Civ. P. 38(b), plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that the Court:

(a) Assume jurisdiction of this action;

(b) Declare that defendants' actions violate 15 USC §§ 1692c, 1692d, 1692e, 1692f, 1692g and GBL § 349;

(c) Declare that defendant Cullen violated NYJL § 487;

(d) Enjoin defendants from committing similar deceptive practices in the future;

(e) Award plaintiff actual and statutory damages pursuant to 15 USC § 1692k(a) and GBL §§ 349c and 349h; punitive damages under GBL §349; and treble actual damages under NYJL §487;

(f) Award costs and attorney's fees to the plaintiff; and

(g) Award plaintiff such other and further relief as may be just and proper.

Dated: December 20, 2017

Respectfully submitted,

*Mary P. McCune*

MANHATTAN LEGAL SERVICES
By: Mary McCune (MM 3298)
One West 125th Street, 2nd Floor
New York, New York 10027
(646) 442-3168
mmccune@lsnyc.org